# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION



```
****************************************************************************
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 13-30158-MAM |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | **MEMORANDUM OPINION** |
| -vs- | * | **DENYING MOTION TO DISMISS** |
| | * | |
| STEVEN NICHOLS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

```
****************************************************************************
```

## SUMMARY

Steven Nichols, a non-Indian, was excluded from the Rosebud Sioux Indian Reservation. While his exclusion was in effect, he was seen driving on a public road within the reservation. Tribal officers stopped and detained him until an FBI agent arrived. The agent then arrested him for criminal trespass. Nichols claims that the tribe did not have the authority to ban him from using the road and that his federal trespass charge – built upon a tribal writ and order of exclusion – should be dismissed. Because (1) there exists latent factual issues that require an evidentiary foundation, (2) there has been no exhaustion of tribal remedies or any showing that some exception to the exhaustion prescription applies, and (3) there is no ambiguity in the language of the revocation petition as amended, Nichols's dismissal motion must be denied, but without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Nichols has been prosecuted and convicted on several prior occasions in federal court for assault and trespass violations that occurred on the Rosebud Reservation.  His convictions were all for misdemeanor offenses that were committed over a two and-a-half year time period.

In April, 2011, Nichols pled guilty to assault by striking, beating and wounding a female tribal member.  Two months later, he was given a six-month custody sentence.

On February 27, 2013, he was convicted of two counts of criminal trespass.  He was thereafter sentenced to a 30-day custody term on Count I and one year of probation on Count II.

Within 10 months, Nichols was convicted, once again, of two counts of criminal trespass.  He was given another six months in jail on one count and a year of probation on the other count.

In the signed factual basis statements that were filed and attested to under oath in both trespass cases, Nichols confirmed that:

1.    On June 10, 2011, he was served with a petition for exclusion of a non-Indian that sought to preclude him from entering the lands of the Rosebud Reservation;

2.    On September 22, 2011, a Rosebud tribal court issued an emergency writ and order of exclusion barring him from reservation lands;

3.    The tribal council likewise voted to exclude him from the reservation on September 22;

2

4.  The next day, September 23, 2011, a tribal officer served him with a copy of the writ and exclusion order and escorted him off of the reservation to the Nebraska state line; and

5.  By being on the reservation, he defied the orders to leave and not re-enter that had previously been communicated to him.

At his December 13, 2013 plea and sentencing hearing, Nichols also admitted to violating his probation on the February 27 offense by illegally trespassing on the reservation. He received a sentence of 30 days incarceration and his probation was terminated.

On March 18, 2014, Nichols was charged with criminal trespass for a third time. But unlike the prior sets of charges (which involved trespasses onto lands owned by or held in trust for the tribe), the new trespass charge is based on him driving a motor vehicle on a public road within the exterior boundaries of the reservation.

The Government alleges that Nichols was operating a 1998 Pontiac Bonneville on BIA Route 5 near the Two Strike housing community, within Todd County, and on the reservation. A tribal officer observed Nichols's car cross the fog line several times. The officer also noticed that there were several children in the car and at least one of them did not have child restraints on. The officer stopped the car and identified the driver as Nichols, who the officer believed was not supposed to enter the reservation. Nichols was then detained pending confirmation that the writ and exclusion order was still valid. Because of his non-Indian status, the FBI was contacted. Later in the day, an FBI agent swore out a criminal complaint, traveled to the reservation, arrested Nichols and took him into federal custody on the complaint.

3

The following week, a petition was filed alleging that Nichols had violated his probation by being arrested and charged with criminal trespass and by entering the Rosebud Reservation. The petition was subsequently amended twice and now alleges that he engaged in conduct that constitutes a federal law violation, namely, criminal trespass, and that he breached one of his special conditions by entering the reservation. After denying the original allegations and requesting a revocation hearing, he filed a motion to dismiss the case. In his motion, he claims that the tribe did not have the authority to exclude him from driving on a public road within the reservation, and that because of this, he did not engage in or commit a criminal trespass. He also claims that the language used in the petition to describe his non-compliant behavior is ambiguous and requires dismissal of the petition under the rule of lenity. The Government resists the motion, arguing that the tribal court and council had the power to keep him from entering or remaining within the boundaries of the reservation – including public roads running through it – and that he can be held criminally accountable as a trespasser in federal court. The Government likewise insists that the petition adequately informs him of the alleged probation violations.

## DISCUSSION

Several issues are presented by Nichols's dismissal motion: (1) Is his claim a legal issue that the Court can decide prior to the revocation hearing or should the claim be addressed after the evidentiary portions of the hearing; (2) Is Nichols, in this probation revocation proceeding, entitled to collaterally attack the tribal writ and exclusion order; and (3) If so, must he first exhaust his tribal court remedies.

4

## A.   Court Authority over Misdemeanor Revocation

At the outset, the Court is authorized to preside over the adjudicatory and dispositional facets of this revocation case. Under federal law, a magistrate judge has authority to conduct a probation revocation hearing when: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment and sentence by a magistrate judge; and (3) the defendant initially was sentenced by a magistrate judge.[1]

All three of these conditions have been satisfied here. Nichols's probation was for a Class A misdemeanor. He consented in writing to trial, judgment and sentence before the Court. And the Court ultimately imposed the probation sentence which the Government now seeks to revoke. The Court, therefore, is fully empowered to take up and adjudicate the motion to dismiss.[2]

## B.  Evidentiary Questions

Nichols and the Government seemingly agree that the issues presented in the motion to dismiss are purely legal ones that the Court can pass on before trial. The Court, however, is not so convinced. The "facts" and circumstances recited, even if true, raise

---

[1]*See* 18 U.S.C. §3401(b), (d); *United States v. Colacurcio*, 84 F.3d at 326, 329 (9th Cir. 1996).

[2]*See United States v. Schnitker*, 281 Fed. Appx. 295, 298 (5th Cir. 2008); *United States v. Ruiz-Rodriguez*, 277 F.3d 1281, 1286 (11th Cir. 2002); *see and compare Colacurcio*, 84 F.3d at 329.

evidentiary questions that have a direct bearing on the merits of Nichols's motion and his status as an alleged probation violator. These issues include the following factual matters:

1. How did the children come to be in Nichols's car on March 14, 2014?

2. Where did he pick up the children?

3. Were any of the children Indians and Rosebud tribal members?

4. Did he, at any time on March 14, leave BIA Route 5 while still within the perimeter of the reservation?

5. Did he ever drive through or set foot on any reservation land that day?

6. Did he enter into and have, at the time of the charged offense, a consensual relationship with Stevie Jo Stacey, a member of the tribe, or any other tribal member? If so, what was the nature and extent of the relationship(s), what did it consist of and how (i.e. by what means) was it maintained?

7. Did he engage in any activity or conduct on the reservation that was detrimental to or directly affected or threatened the health or welfare of tribal members?

8. Why was he excluded from the reservation (i.e. what was the basis for his exclusion)?

The second amended petition alleges the same law violation Nichols is charged with in his pending criminal case – criminal trespass – and continues to allege that he did not follow the special condition barring him entering, or remaining on, the Rosebud Reservation. This petition, on its face, sets forth colorable grounds for a probation violation and is presumed to be valid. The Government is thus entitled to present its evidence at a revocation hearing and have the same tested by a dismissal motion at the close of the Government's case and after both parties have rested. Evidentiary questions go to the

6

"general issue" of revocation and should be determined at the hearing and not in a dismissal motion filed beforehand. Because there is no explicit authority for the Court to employ a kind of "criminal summary judgment procedure" to dismiss the revocation petition, Nichols's motion should be denied, without prejudice.

## C. Personal Jurisdiction and Tribal Authority to Exclude

Nichols acknowledges that he cannot collaterally attack the substantive merits of the underlying tribal writ and exclusion order.[3] But he claims that such an attack, on the writ and order, is permitted to show that the court or body that entered it did not have personal jurisdiction over him.[4] He asserts that both the tribal court and council lacked the authority to prevent him from traveling on a public road within the confines of the reservation – an assertion that challenges the tribe's *in personam* jurisdiction.

Whether a tribe has adjudicative authority – authority which cannot exceed the tribe's legislative jurisdiction – over nonmembers is a federal question.[5] If the tribe is found

---

[3]*See* Dkt. No. 24 at 6; *Berner*, 587 F.Supp.2d at 1109.

[4]*See id.*; *United States v. Bigford*, 365 F.3d 859, 865-66, 872-73 (10th Cir. 2004); *United States v. Kramer*, 225 F.3d 847, 851, 857-58 (7th Cir. 2000); *Berner*, 587 F.Supp.2d at 1109; *see generally* 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure*, §3536 at 5, 7-8 (3d ed. 2008); 47 Am.Jur.2d *Judgments* §§750, 758 (2006 & 2014 Supp.)

[5]*See Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324, 330 (2008) (*citing Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987); *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 852-53 (1985)).

to have lacked jurisdiction, any order that relates to the nonmember is "necessarily null and void."[6]

For almost two centuries, Indian tribes have been recognized as "distinct, independent political communities"[7] qualified to exercise many of the powers of self-government.[8] The "sovereignty that Indian tribes retain [however,] is of a unique and limited character."[9]  It revolves around the land held by a tribe and on tribal members within the reservation.[10]

As part of their residual sovereignty, tribes retain the inherent power to exclude outsiders from tribal territory.[11]  Their exclusionary power exists independently of their general jurisdictional authority.[12]  Even when they lack civil or criminal jurisdiction over

---

[6]*Plains Commerce Bank,* 554 U.S. at 324.

[7]*Worcester v. Georgia,* 6 Pet. 515, 559 (1832).

[8]*See United States v. Wheeler,* 435 U.S. 313, 322-23 (1978).

[9]*Id.* at 323.

[10]*See United States v. Mazurie,* 419 U.S. 544, 557 (1975) (tribes retain authority to govern "both their members and their territory" subject ultimately to Congress).

[11]*See e.g. New Mexico v. Mescatero Apache Tribe,* 462 U.S. 324, 333 (1983); *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 144-45, 159 (1982); *Donovan v. Navajo Forest Prods. Indus.,* 692 F.2d 709, 712-13 (10th Cir. 1982); *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408, 410-11 (9th Cir. 1976); Op. Sol. Interior, 55 Interior Dec. 14, 48-50 (1934) (powers of Indian tribes); 1 Op. Att'y Gen. 465 (1821).

[12]*See Water Wheel Camp Recreational Area, Inc. v. LaRance,* 642 F.3d 802, 810 (9th Cir. 2011).

a nonmember, their officers nonetheless may eject individuals who have violated tribal law or stop, detain and deliver them to the proper authorities.[13]

But, as a general matter, tribes do not possess authority over non-Indians who come within their borders: "[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."[14]  Instead, tribes have, by virtue of their incorporation into the American republic lost "the right of governing . . . person[s] within their limits except themselves."[15]

This general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when these activities occur on non-Indian land.[16]  Thanks to the General Allotment Act,[17] there are millions of acres of non-Indian land located within the contiguous borders of Indian tribes.[18]

---

[13]*See Duro v. Reina,* 495 U.S. 676, 696-97 (1990); *see also Strate v. A-1 Contractors,* 520 U.S. 438, 456 n. 11 (1997) (where the Supreme Court did not "question the authority of tribal police to patrol roads within the reservation, including rights-of-way made part of a state highway, and to detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law"); *United States v. Terry,* 400 F.3d 575, 579-80 (8th Cir. 2005) (upholding overnight detention of a non-Indian in a tribal jail where state law enforcement officials found it inconvenient to take custody of him until the next morning).

[14]*Montana v. United States,* 450 U.S. 544, 565 (1981).

[15]*Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 209 (1978).

[16]*See Strate,* 520 U.S. at 446.

[17]*See* 24 Stat. 388 (1887) (also known as the Dawes Act).

[18]*See Atkinson Trading Co., Inc. v. Shirley,* 532 U.S. 645, 648, 650, n.1 (2001).

Once tribal land has been transferred or conveyed to a non-Indian, the tribe loses any right of absolute and exclusive use and occupation of the land as well as regulatory jurisdiction over another's use of it.[19] When this happens, the tribe has no authority, by way of tribal ordinance or tribal court action, to regulate the use of the land.[20]

Indian tribes though may exercise "civil jurisdiction over non-Indians on their reservations, even on non-Indian land, in two limited circumstances."[21] First, "[a] tribe may regulate . . . the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements."[22] Second, a tribe may exercise civil authority over the conduct of non-Indians on lands within the reservation "when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe."[23] These rules have become known as the *Montana* exceptions and pertain to the regulation of nonmember activities and the conduct of non-Indians on reservation land.[24]

---

[19]*See South Dakota v. Bourland,* 508 U.S. 679, 689 (1993).

[20]*See Brendale v. Confederated Tribes and Bands of Yakima Indian Nation,* 492 U.S. 408, 430 (1989).

[21]*Plains Commerce Bank,* 554 U.S. at 329.

[22]*Id. (quoting Montana,* 450 U.S. at 565*).*

[23]*Plains Commerce Bank,* 554 U.S. at 329-30 (*quoting Montana,* 450 U.S. at 566).

[24]*See Plains Commerce Bank,* 554 U.S. at 330.

Given *Montana's* "'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,'"[25] tribal regulation of nonmembers, especially on non-Indian land, is "presumptively invalid."[26] The burden is on the tribe to establish that one of the *Montana* exceptions would allow for an extension of tribal authority to regulate nonmembers on non-Indian land.[27]

In Nichols's case, whether the tribal court and council had the civil authority to exclude and thus had personal jurisdiction over him is a federal question.  Even so, principles of comity require that the Court stay its hand and allow the tribal courts the opportunity to initially pass on the jurisdictional question.[28]  In light of Congress's policy of "supporting tribal self-government and self-determination," Rosebud tribal courts should be allowed to decide, in the first instance, the factual and legal basis for any challenge to the tribe's jurisdiction.[29]  Indeed, bypassing this exhaustion requirement would "impair the authority of [Rosebud] tribal courts over reservation affairs" and "infringe

---

[25]*Atkinson*, 532 U.S. at 651 (*quoting Montana*, 450 U.S. at 565).

[26]*Atkinson*, 532 U.S. at 659.

[27]*See id.* at 654.

[28]*See National Farmers Union*, 471 U.S. at 855-57; *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1420-21 (8th Cir. 1996); *Wilson v. Bull*, CIV. 12-5078-JLV, 2014 WL 412328 at **1, 3-6 (D.S.D. Feb. 3, 2014).

[29]*National Farmers Union*, 471 U.S. at 855-57.

upon tribal law-making authority because [these] courts are best qualified to interpret and apply tribal law."[30]

What this means, is that at a minimum, the tribe and its courts – including appellate courts – must have the opportunity to review the validity of the writ and exclusion order now under attack.[31] Or, stated another way, Nichols must exhaust available tribal remedies and allow the legitimacy of the writ and order to be adjudicated in tribal court.[32]

Nichols does not cite to either of the *Montana* exceptions. Nor does he acknowledge the need for tribal exhaustion or argue that there is any exception to it[33] that is applicable to him. The record is devoid of any indication that he ever made a personal jurisdiction challenge in tribal court. Rather, he relies on various tribal code provisions to support his claim that the Rosebud Tribe has no personal jurisdiction over him.

Nichols is the moving party who seeks to dismiss the revocation petition. He therefore has the burden to show that the underlying tribal writ and order, excluding him

---

[30]*LaPlante*, 480 U.S. at 16.

[31]*See id.* at 17.

[32]*See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 494 F.3d 1017, 1021-24 (8th Cir. 2007).

[33]*See National Farmers Union*, 471 U.S. at 856, n. 21 (holding that exhaustion is not required "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith' . . . or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction").

from the Rosebud Reservation, was void for lack of personal jurisdiction.[34] He has failed

to satisfy his burden.

Just because Nichols was traveling on a public road does not mean he is immune

from tribal authority.  The road he was on and the situs of the stop were within the exterior

boundaries of the Rosebud Reservation and in "Indian country" as defined by federal law.[35]

---

[34]*See Bigford,* 365 F.3d at 872; *see also Philos Technologies, Inc. v. Philes & D, Inc.,* 645
F.3d 851, 857 (7th Cir. 2011) (a defendant who asserts a jurisdictional defense in a
collateral proceeding bears the burden of proving that the court lacked jurisdiction over
his person); *Miller v. Jones,* 779 F.Supp. 207, 210-11 (D. Conn. 1991) (defendant who has
been served but does not appear bears the burden of proving absence of personal
jurisdiction in any later collateral attack of the resulting judgment).

[35]*See* 18 U.S.C. §1151(a) (defining "Indian country" as all land within the limit of
any Indian reservation "including rights-of-way"); *see also Decoteau v. District County
Court,* 420 U.S. 425, 427 n.2 (1975) (land within reservation is subject to tribal and federal
jurisdiction including rights-of-way); *Bressi v. Ford,* 575 F.3d 891, 896 (9th Cir. 2009)
(citing 18 U.S.C. §1151(a) and holding that state highway is still within the reservation
and part of Indian country); *Ortiz-Barraza v. United States,* 512 F.2d 1176, 1180 (9th Cir.
1975) (rights-of-way running through a reservation remain part of the reservation and
within the territorial jurisdiction of tribal police); *State v. Schmuck,* 121 Wash.2d 373, 389-
90, 850 P.2d 1332, 1340-41 (same), *cert. denied,* 510 U.S. 931 (1943); *Cohen's Handbook of
Federal Law,* §4.01[2][e] at 221-22 (2012 ed.) ("Access by . . . the public on federal roads
would seem to be subject to reasonable regulation by the tribe if a significant tribal
interest, such as health and safety, requires that access be limited."); *but see Strate,* 520
U.S. at 454 (wherein the Supreme Court treated the state right-of-way as the equivalent
of a non-Indian owned fee land and pointed to the fact that the tribe retained no
landowner's right to occupy and exclude, and the various factors, including tribal
consent to the right-of-way caused the same to function more as non-Indian owned
land); *Nord v. Kelly,* 520 F.3d 848, 854 (8th Cir. 2008) (in determining whether a state
right-of-way is equivalent to non-Indian fee land for purposes of tribal court jurisdiction
over activities of nonmembers, a court need not consider coercive conduct evidence
between state and tribe in relation to the right-of-way where the record showed that the
tribe contained no "gate keeping right" over the right-of-way, that the right-of-way
remained part of the state highway system and that no statute or treaty granted or
retained tribal authority over nonmembers).

Apart from this, Nichols appears to have had, and maintained, a consensual relationship with a female tribal member.[36] And his prior transgressions and disruptive conduct may very well have been sufficient to subject him to regulation to protect tribal health and safety interests.[37]

Regardless of what the cognizable source is for granting or prohibiting the tribe's authority over him, the law is clear that Nichols is required to first raise his personal jurisdiction challenge in tribal court and allow the Rosebud courts the chance to determine tribal jurisdiction.[38] Only after the tribal courts have had a full and fair opportunity to decide the issue can and should the Court take up the same.[39]

## D. Ambiguity of the Petition

Nichols complains that the violation conduct, set forth in the revocation petition, is ambiguously written. But any alleged ambiguity was cured by the subsequent amendment of the petition. The second amended petition explicitly describes the charges and the

---

[36]*See* CR. 11-30025; *Montana*, 450 U.S. at 565.

[37]*See* CR. 11-30025, 12-30153, 13-30158; *Montana*, 450 U.S. at 566; *see also United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996) (requiring exhaustion in a trespass case); *United States v. Plainbull*, 957 F.2d 724, 727-28 (9th Cir. 1992) (same); *United States v. Ray*, No. C11-5056 BHS, 2011 WL 2490001 at **1-3 (W.D. Wash. 2011) (same); *see generally*, Cohen, §7.02[2] at 604-06.

[38]*See LaPlante*, 480 U.S. at 15-18; *National Farmer's Union*, 471 U.S. at 856-57.

[39]*Id.*

circumstances surrounding them.[40]   The petition, as it is currently written, gives him

sufficient notice of his supposed infractions for him to deny them and prepare a defense.[41]

There is no ambiguity or prejudice to him in going forward[42] and no right, in this setting,

to attack his original conviction and sentence.[43]

## CONCLUSION

Potential factual questions exist, in need of further evidentiary development, that

are relevant to a decision on the merits of Nichols's motion to dismiss.  These questions are

intertwined with and not segregable from the authority and jurisdictional issues he raises

in his motion.

What's more, the Rosebud Tribe's authority to regulate Nichols and its personal

jurisdiction (or lack thereof) over him are issues which first must be dealt with in tribal

court.  He has failed to carry his burden of demonstrating that the tribe lacked authority

---

[40]*See United States v. Morgan*, 13 Fed. Appx. 648, 649 (9th Cir. 2001).

[41]*See id.; Kartman v. Parratt*, 397 F.Supp. 531, 534 (D. Neb. 1975), *aff'd*, 535 F.2d 450 (8th Cir. 1976); Fed. R. Crim. P. 32.1, advisory committee's note (1979); *see also United States v. Sistrunk*, 612 F.3d 988, 992 (8th Cir. 2010) (discussing the question of what specific information is required for notice to be effective in a supervised release revocation petition); *United States v. Kirtley*, 5 F.3d 1110, 1112-14 (7th Cir. 1993) (probation officer's petition afforded probationer sufficient notice where it set forth specific condition of probation that he violated, time period during which violation occurred and basic facts regarding violation).

[42]*See Sistrunk*, 612 F.3d at 992-93.

[43]*See United States v. Torrez-Flores*, 624 F.2d 776, 780-81 (7th Cir. 1980); *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir. 1977), *cert. denied*, 434 U.S. 1045 (1978); *United States v. Franciscine*, 512 F.2d 827, 829 (5th Cir.), *cert. denied*, 423 U.S. 931 U.S. (1975).

or jurisdiction to exclude him from the public road he was stopped and detained on or otherwise.  He has also failed to exhaust his remedies in tribal court and has not pointed to any exception to the exhaustion requirement that applies to his case.

Finally, whatever ambiguities may have existed in the way the revocation petition was initially pled have been taken care of through later amendments.  The petition, as it now reads, adequately describes Nichols's alleged non-compliant behavior and is not at all confusing even when read in conjunction with, and in light of, the banishment condition of his probation sentence.

In accordance with the discussion in this opinion and the record as it currently stands, Nichols's motion shall be and is denied, without prejudice.

Dated this 20th day of August, 2014, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

16